FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 13, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LINDA W., | NO:  1:18-CV-3060-RMP |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for

summary judgment from Plaintiff Linda W.[1], ECF No. 12, and the Commissioner of

Social Security ("Commissioner"), ECF No. 13.  Plaintiff seeks judicial review,

pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claims for

disability insurance benefits under Title II and supplemental security income under

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

name and last initial, and, subsequently, Plaintiff's first name only, throughout this

decision.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 1

Title XVI of the Social Security Act (the "Act"). *See* ECF No. 12 at 1−2. The Court has reviewed the motions, the administrative record, the relevant law, and is fully informed. For the reasons stated below, Linda's motion, ECF No. 12, is denied, and the Commissioner's motion, ECF No. 13, is granted, resulting in a denial of benefits.

## BACKGROUND

### A. Linda's Claim for Benefits and Procedural History

On July 10, 2014, Linda filed applications for disability insurance benefits and supplemental security income alleging that she had become disabled beginning on June 15, 2009. Administrative Record ("AR")[2] 204, 211. Linda claimed disability based on low vision, migraines, and depression. AR 254.

### B. November 4, 2016 Hearing

Linda was represented by attorney Cory Brandt at her hearing before Administrative Law Judge ("ALJ") Keith Allred on November 4, 2016. Linda testified in response to the ALJ's and her attorney's questions. In addition, vocational expert Sonia Stratton testified in response to questions from the ALJ regarding hypothetical scenarios and follow-up questions from Linda's attorney.

At the beginning of the hearing, Linda amended her onset date to August 30, 2013, asserting that she was disabled by a combination of mental and physical impairments from that time. AR 51. Linda's attorney asserted that the impairments

[2] The AR is filed at ECF No. 9.

took the form of debilitating migraine headaches since 2013, persistent problems from deep vein thrombosis due to a blood clot in her leg in 2014, and issues with depression and anxiety for which she has been receiving treatment since at least 2013. AR 52.

Linda testified that she was 47 years old at the time of the hearing. AR 55. She completed high school and worked in administrative customer service at the same company from 1988 to 2009, and briefly in 2011 as a construction flagger. AR 55–56. Linda testified that her depression and anxiety symptoms present her biggest obstacle to engaging in full-time work. AR 58–61. Plaintiff described struggling to concentrate, crying "at least three times a day for absolutely no reason," isolating herself from other people, and feeling overwhelmed by small tasks. AR 58–60.

Her next biggest obstacle, as described by Linda, is her circulation issues following the blood clot in her left leg, which requires her to walk approximately five minutes of every hour, wear compression hosiery, and elevate her leg above her heart for twenty minutes three or four times per day. AR 63–64. In addition, Plaintiff describes her poor vision, interrelated with recurring migraines, and an atypical menstrual cycle with pelvic pain as further impediments to her ability to work full-time.

Linda testified that her medical conditions limit what she can do during the day and disrupt her sleep at night. She is unable to garden as much as she would like because of difficulty kneeling, and she naps often due to drowsiness as a side

effect of her anti-anxiety medication and because her nighttime sleep is disrupted by leg cramps and "mind racing." AR 68. She also has an elderly dog that "needs a lot of care," and wakes Linda during the night. AR 67. Up until recently, Linda cared for her boyfriend's son before and after school to reduce household expenses.

**C. ALJ's Decision**

On March 27, 2017, the ALJ issued an unfavorable decision. AR 19−35. Applying the five-step evaluation process, Judge Allred found:

**Step one:** Plaintiff's earnings records do not reflect substantial gainful since the amended alleged onset date of August 30, 2013.

**Step two:** Plaintiff has the following severe impairments: "reduced visual acuity due to myopic astigmatism and presbyopia, migraine headaches, an affective disorder, and an anxiety disorder . . . in combination if not singly . . . because they cause limitations or restrictions having more than a minimal effect on the claimant's ability to perform basic work activities." AR 22. However, the ALJ found that deep vein thrombosis, diagnosed in August 2014, was a non-severe impairment after it was treated and that residual lower extremity coagulation issues experienced by Plaintiff are sufficiently addressed through compression stockings, leg elevation, and walking. The ALJ reasoned, "I am satisfied that the reduction to a light level of exertional demand, with only occasional postural tasks, would accommodate the described condition." AR 23. The ALJ also found that Plaintiff's body weight did not constitute a severe impairment.

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ noted that Plaintiff, through counsel, acknowledged at the hearing that her impairments do not meet or equal any listed impairment. The ALJ further addressed each of the claimant's impairments individually.

**Residual Functional Capacity ("RFC"):** Linda has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk for six hours out of an eight-hour workday, with normal rest breaks. The claimant can occasionally climb ramps or stairs, balance, stoop, bend, squat, knee, or crouch. The claimant cannot crawl or climb ladders, ropes, or scaffolds. The claimant can frequently perform tasks requiring near visual acuity. The claimant can perform competitive, remunerative, semiskilled work including the ability to understand, carry out, and remember detailed, but not complex instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. However, the claimant requires work that involves no more than frequent interaction with coworkers, and supervisors, and occasional contact with the general public.

AR 27.

**Step four:** Plaintiff is unable to perform past relevant work as a secretary and as a flagger because "each of these jobs requires a level of exertional demand that exceeds the claimant's residual functional capacity to perform work of a light exertional demand level with restrictions on social interaction." AR 33.

**Step five:** Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including cleaner or housekeeper, garment sorter, and garment folder.

Therefore, Plaintiff has not been under a disability, as defined by the Social Security Act, from August 30, 2013, through the date of the ALJ's decision.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 14, 2018. AR 1−; *see also* 20 C.F.R. § 404.981, § 416.1481.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a benefits

claimant shall be determined to be under a disability only if her impairments are of

such severity that the claimant is not only unable to do her previous work but cannot,

considering her age, education, and work experiences, engage in any other

substantial gainful work which exists in the national economy. 42 U.S.C.

§§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both

medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).

### C. Sequential Process

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one

determines if she is engaged in substantial gainful activities. If the claimant is

engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision

maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination

of impairments, the disability claim is denied.

1    If the impairment is severe, the evaluation proceeds to the third step, which

2    compares the claimant's impairment with a number of listed impairments

3    acknowledged by the Commissioner to be so severe as to preclude any gainful

4    activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R.

5    § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed

6    impairments ("the Listings"), the claimant is conclusively presumed to be disabled.

7    If the impairment is not one conclusively presumed to be disabling, the

8    evaluation proceeds to the fourth step, which determines whether the impairment

9    prevents the claimant from performing work she has performed in the past.  If the

10   claimant is able to perform her previous work, she is not disabled.  20 C.F.R.

11   §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's RFC

12   assessment is considered.

13   If the claimant cannot perform this work, in the fifth and final step in the

14   process the decision maker determines whether the claimant is able to perform other

15   work in the national economy in view of her residual functional capacity and age,

16   education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

17   416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

18   The initial burden of proof rests upon the claimant to establish a prima facie

19   case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

20   Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

21   is met once the claimant establishes that a physical or mental impairment prevents

her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff raises the following issues regarding the ALJ's decision:

1. Did the ALJ erroneously characterize Plaintiff's deep vein thrombosis and ongoing circulation issues as non-severe impairments at step two?
2. Did the ALJ improperly reject the opinions of Plaintiff's medical providers?
3. Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?
4. Did the ALJ fail at step five to formulate a hypothetical question to the vocational expert that contained all of Plaintiff's credible limitations?
5. If there was harmful error, whether Plaintiff has established that a finding of disability is appropriate on this record?

### Step two analysis of deep vein thrombosis ("DVT")

Plaintiff challenges the ALJ's step two determination that DVT is not a medically severe impairment, with no more than a minimal effect on Plaintiff's ability to work. The Commissioner responds that there cannot be harmful error at step two when the ALJ resolves step two in the claimant's favor. ECF No. 13 at 3 (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)). The Commissioner further argues that Plaintiff "has not shown that the ALJ erred in considering this impairment at later steps, either." *Id.*

An error is harmless if it "was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Accordingly, "omissions at step two are often harmless error if step two is decided in plaintiff's favor." *Nicholson v. Colvin*, 106 F. Supp. 3d 1190, 1195 (D. Or. 2015) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (determining that any error the ALJ made at step two was harmless because the ALJ found in favor of plaintiff by identifying at least one severe impairment at step two)); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Step two is considered a "de minimis screening device to dispose of groundless claims." *Bowen v. Yuckert*, 482 U.S. 137, 153−54 (1987). Once an ALJ determines at step two that a claimant suffers from at least one "severe" impairment, the ALJ must consider the limiting effects of all of claimant's medically determinable impairments, severe and non-severe, in the remaining steps of the disability determination process. 20 C.F.R. § 404.1523; *see also Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *Smolen v. Chater*, 80 F.3d 1273, 1290 (1996).

The ALJ found Plaintiff's reduced visual acuity due to myopic astigmatism and presbyopia, migraine headaches, affective disorder, and anxiety disorder to constitute severe impairments. AR 22. The ALJ proceeded to consider the limiting effects of Plaintiff's history of DVT and ongoing problems with circulation in her

legs when formulating Plaintiff's RFC.  AR 28, 32.  Accordingly, there is no need to reach the issue of whether the ALJ erroneously found Plaintiff's DVT to be a non-severe impairment.  The ALJ found in Plaintiff's favor by identifying other severe impairments at step two of the disability inquiry and considered the effects of DVT in the remaining portion of the determination.  There is no error on this basis.

### *Treatment of medical opinion evidence*

Plaintiff contends that the ALJ improperly rejected the opinions of Plaintiff's treatment providers, Albert Brady, M.D., Laura Powers, Pharm. D.,[3] and Melissa Belding, M.S.[4]

Dr. Brady

Dr. Brady, who had previously treated Plaintiff for DVT, completed a medical source questionnaire on January 20, 2015, in which he opined that Plaintiff is capable only of sedentary work and needs regular breaks.  AR 454−55.  Dr. Brady expressed that he was doubtful that Plaintiff could work full-time.  *Id.*  Dr. Brady

---

[3] The ALJ and Plaintiff refer to this treatment provider as "Luara Powell" and "Laura DeCamp . . . Dr. Powell (formerly DeCamp)," respectively.  AR 31; ECF No. 12 at 7.  However, the Commissioner clarifies that her name is "Laura R. Powers (formerly DeCamp)[.]"  ECF No. 13 at 10.

[4] The ALJ refers to Ms. Belding as "Melissa Bolding" in his decision.  *See* AR 30.

also opined that, more probably than not, Plaintiff would miss "2-4 days [per month from full-time work] for pain and bleeding." AR 455.

Plaintiff argues that the ALJ erroneously relied on the following bases to discount Dr. Brady's opinion: "(1) the suggestion that the claimant can or cannot work is one requiring a legal conclusion reserved for the Commissioner, (2) the opinion indicates that the claimant's use of anticoagulants is the basis of the doctor's opinions, (3) the doctor's concerns are inconsistent with the claimant's activities and opinions of the state agency consultants, and (4) the claimant's deep vein thrombosis was in remission"). ECF No. 12 at 13 (citing AR 31−32).

The Commissioner responds that the ALJ "rationally found that [Plaintiff's DVT] episodes in the past did not render he unable to work presently." ECF No. 13 at 6. The Court agrees.

With respect to medical opinions, an ALJ must accord more weight to a treating physician's opinion than an examining physician's, and an examining physician's opinion carries more weight than a non-examining, reviewing, or consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must articulate "specific and legitimate" reasons, supported by substantial evidence in the record, to reject the opinion of either a treating or an examining doctor. *Lester*, 81 F.3d at 830–31.

In determining Plaintiff's RFC, the ALJ offered specific and legitimate reasons for giving little weight to Dr. Brady's conclusions. AR 31−32. The ALJ noted that Plaintiff had ceased the treatment, anticoagulants, that Dr. Brady indicated Plaintiff received for DVT. The record also indicated that the doctor's concerns regarding Plaintiff missing work for "bleeding" were not supported by Plaintiff's self-reported activities or medical records indicating normal findings during examinations, and an absence of symptoms due to DVT. *See id.* The ALJ's consideration of Dr. Brady's opinions does not support a finding of error.

<u>Ms. Belding</u>

Plaintiff's mental health counselor, Ms. Belding, opined on February 18, 2014, that Plaintiff has "markedly limited" ability to:

- Understand, remember, and/or carry out detailed instructions;
- Maintain attention and concentration for extended periods; and
- Complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

AR 353−55.

Ms. Belding opined that, more probably than not, Plaintiff would miss three days of work, on average, per month. AR 355.

The ALJ considered Ms. Belding's opinions only to the extent that they showed the severity of Plaintiff's impairments and her ability to function, on the

basis that Ms. Belding is not an acceptable medical source who can give a medical opinion or make a diagnosis under the Social Security regulations. AR 30. The ALJ accorded Ms. Belding's assessment of Plaintiff's abilities and the severity of her impairment "little weight" because Ms. Belding's opinion is inconsistent with consultative examiner R.A. Cline, Psy.D., and with Plaintiff's self-reported level of function. AR 31.

Plaintiff assigns error to the ALJ's assessment based on an argument that the ALJ "could not properly reject her assessment because she is not an 'acceptable medical source.'" This argument is unavailing because, simply, the ALJ did not reject Ms. Belding's opinion because Ms. Belding was not an acceptable medical source. *See* AR 30−31.

Plaintiff next argues that the ALJ did not articulate specific ways in which Ms. Belding's opinion conflicted with Dr. Cline's, and, in any case, the ALJ should have credited Ms. Belding's assessment over Dr. Cline's because Ms. Belding actually treated Plaintiff while Dr. Cline had much less contact with Plaintiff by merely examining her. For purposes of disability determination, therapists are not "acceptable medical sources"; therefore, their medical opinions are not entitled to controlling weight. SSR No. 06-03p, 2006 SSR LEXIS 5 at *4. The fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

most qualified health care professionals.'" *Id.* at \*12. However, the Commissioner has acknowledged that, after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source appropriately may be given more weight if that source "has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.*

Ms. Belding completed a "Mental Medical Source Statement" questionnaire on which she checked boxes indicating her opinion regarding Plaintiff's degree of limitation in twenty different work-related activities or tasks. AR 353−55. Ms. Belding did not provide any narrative explanation for her opinions. Consequently, Ms. Belding did not provide better supporting evidence, nor a better explanation for her opinion. *See* SSR No. 06-03p, 2006 SSR LEXIS 5 at \*12.

Moreover, the way in which Ms. Belding's opinions differ from Dr. Cline's is apparent from the face of the ALJ's decision. Summarizing Dr. Cline's findings, the ALJ wrote:

> In August of 2014, R.A. Cline, PsyD., assessed the claimant as having no more than moderate impairments to her ability to understand, remember, and persist with detailed instructions, perform activities within a schedule without special supervision, make simple work-related decisions, be aware of and avoid normal hazards, ask simple questions, communicate and perform effectively in a work setting, and complete a normal work schedule without interruptions from psychological symptoms; all other assessed functional areas were described as not impaired or mildly impaired.

AR 30.

1    In short, the ALJ found that Dr. Cline found "no more than moderate"

2    impairment where Ms. Belding found "marked" impairment.  AR 30−31.

3    Therefore, the Court does not find that the ALJ's treatment of Ms. Belding's opinion

4    was erroneous for lack of specificity or for failing to accord it more credit because

5    Ms. Belding was a treating rather than examining medical source.

6        Third, Plaintiff assigns error to the ALJ for discounting Ms. Belding's opinion

7    based on a "boilerplate" finding that Ms. Belding's opinions were inconsistent with

8    Plaintiff's self-reported activities.  ECF No. 12 at 16.  However, as the

9    Commissioner asserts, the ALJ provided support for his third basis for according

10   Ms. Belding's opinion little weight by citing two exhibits in the record.  *See* ECF

11   No. 13 at 9−10; AR 31.  Those exhibits demonstrate that Plaintiff herself reported an

12   ability to carry out a wide variety of functions, including cleaning, doing laundry,

13   ironing, preparing meals, vacuuming, shopping, and gardening.  AR 285−87.  Those

14   activities could reasonably be interpreted by the ALJ to undermine Ms. Belding's

15   opinion that Plaintiff is "markedly limited" in her ability to complete a normal

16   workday without interruptions from psychologically-based symptoms, among other

17   limitations.  *See* AR 354.

18   <u>Dr. Powers</u>

19       Similar to the ALJ's consideration of Ms. Belding's opinions, the ALJ

20   accorded Dr. Powers' opinions "very little weight."  Dr. Powers completed the same

21   "Mental Medical Source Statement" form, which appears to have been generated by

Plaintiff's counsel, on November 3, 2016, and checked boxes indicating an opinion that Plaintiff is "severely limited" in her ability to:

- Work in coordination with or in proximity to others without being distracted by them; and

- Complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

AR 681−83.

Dr. Powers further opined that Plaintiff is "markedly limited" in her ability to:

- Understand and remember detailed instructions;

- Carry out detailed instructions;

- Maintain attention and concentration for extended periods;

- Perform activities within a schedule, maintain attendance, and be punctual within customary tolerances;

- Sustain an ordinary routine without special supervision;

- Make simple work-related decisions;

- Ask simple questions or request assistance;

- Accept instructions and respond appropriately to criticism from supervisors;

- Respond appropriately to changes in the work setting;

- Travel in unfamiliar places or use public transportation;

1    • Set realistic goals or make plans independently of others.

2    *Id.*

3        Dr. Powers opined that, more probably than not, Plaintiff would miss four or

4    more days of work, on average, per month.  AR 683.

5        Plaintiff asserts that the ALJ erroneously rejected Dr. Powers' opinions for the

6    same reasons Plaintiff asserted with respect to Ms. Belding: (1) Dr. Powers'

7    opinions should not have been discounted because she is not an acceptable medical

8    source, as she treated Plaintiff for one and one-half years in the context of providing

9    a psychiatric evaluation and medication management; (2) the ALJ did not provide

10   specific, legitimate reasons for crediting consultative examiner Dr. Cline's opinions

11   more than treating provider Dr. Powers' opinions; and (3)  the ALJ failed to give

12   specific examples of how Plaintiff's self-reported level of function was inconsistent

13   with Dr. Powers' opinion.  ECF No. 12 at 17.

14       The Court finds the conclusions reached with respect to Ms. Belding are

15   controlling as to the ALJ's treatment of Dr. Powers' opinions, as well.  Dr. Powers,

16   as a pharmacist, is not an acceptable medical source, and she did not offer a "better

17   explanation for her opinion" than Dr. Cline.  *Compare* AR 683 *with* AR 524−29; *see*

18   *also* SSR No. 06-03p, 2006 SSR LEXIS 5 at *12.  In addition, the exhibits that the

19   ALJ cited in finding that Dr. Powers' opinion was inconsistent with Plaintiff's self-

20   reported ability to function support that Plaintiff is not impaired to the extent to

21   which Dr. Powers opined.

1  Accordingly, the Court concludes that the ALJ did not err in weighing

2  medical source opinions.

3  ***Treatment of Plaintiff's symptoms testimony***

4  In general, "questions of credibility and resolution of conflicts in the

5  testimony are functions solely" for the ALJ.  *Parra v. Astrue*, 481 F.3d 742, 750 (9th

6  Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal

7  quotations omitted)).  In determining whether to accept a claimant's subjective

8  symptom testimony, an ALJ must undertake a two-step analysis.  20 C.F.R. §§

9  404.1529, 416.929; *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th

10 Cir. 2007); *Smolen*, 80 F.3d at 1281.

11 Under the first step, the ALJ must find that the claimant has produced

12 objective medical evidence of an underlying "impairment," and that the impairment,

13 or combination of impairments, could reasonably be expected to cause "some degree

14 of the symptom."  *Lingenfelter*, 504 F.3d at 1036.  Where an ALJ finds no evidence

15 of malingering, the ALJ may "'reject the claimant's testimony about the severity of

16 her symptoms only by offering specific, clear and convincing reasons for doing so.'"

17 *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–92 (9th Cir. 2015) (*quoting*

18 *Lingenfelter*, 504 F.3d at 1036).

19 Prior to the ALJ's decision in this matter, a Social Security Ruling that

20 superseded the previous policy governing evaluation of subjective symptoms took

21 effect.  *See* SSR 16-3p, 2016 SSR LEXIS 4 ("SSR 16-3p").  SSR 16-3p provides

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ~ 20

that the Social Security Administration is "eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term[,]" to the effect that the ALJ "will not assess an individual's overall character for truthfulness in the manner typically used during an adversarial court litigation." *Id.* at *1, 27.  Rather, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person" but instead "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]" *Id.* at *28.

The Ninth Circuit noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n. 5 (9th Cir. 2017) (quoting SSR 16-3p) (brackets in original).

Here, the ALJ offered clear and convincing reasons for not fully accepting Plaintiff's statements concerning the intensity, persistence and limiting effects of her

claimed symptoms and their effect on her ability to work.  AR 28−30.  With respect to each ailment, the ALJ considered Linda's allegations in the context of the full record and recited the specific ways in which the symptoms were not consistent with the objective medical evidence.  AR 28−30; *see* SSR 16-3p.  Moreover, the ALJ reasonably accepted Plaintiff's statements to the extent that they were consistent with the objective medical and other evidence.  AR 30; *see id.*

### *Step five evaluation of ability to perform other jobs in light of RFC*

Plaintiff argues that the hypothetical that the ALJ presented to the vocational expert was incomplete because it did not include the limitations posited by Dr. Brady, Ms. Belding, and Dr. Powell.  ECF No. 12 at 20.  Therefore, the vocational expert's testimony does not support that Plaintiff can perform jobs available in the national economy.  *Id.*  However, the Court found that the ALJ appropriately accorded Dr. Brady, Ms. Belding and Dr. Powell's opinions little weight.  As a result, the Court finds no error in excluding the limitations asserted by those providers from the hypothetical posed to the vocational expert in this matter.

Having found no error in the ALJ's decision, the Court grants the Commissioner's motion for summary judgment and denies Plaintiff's.  Based on that conclusion, the Court does not address Plaintiff's argument for remand for an immediate award of benefits.  *See* ECF No. 12 at 21.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

2. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is

   **GRANTED**.

3. Judgment shall be entered in favor of Defendant.

   **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order, provide copies to counsel, and **close the file**.

   **DATED** March 13, 2019.


                                    _s/ Rosanna Malouf Peterson_
                                    ROSANNA MALOUF PETERSON
                                    United States District Judge